Image ID: D00234589D59

**SUMMONS**

Doc. No. 234589

IN THE DISTRICT COURT OF Sarpy COUNTY, NEBRASKA
Sarpy County Courthouse
1210 Golden Gate Dr, Ste 3141
Papillion                NE 68046 3087

S&H Distribution, LLC v. Meyer Laboratory, Inc.

Case ID: CI 22   367

TO: Meyer Laboratory, Inc.

**FILED BY**
Clerk of the Sarpy District Court
03/23/2022

You have been sued by the following plaintiff(s):

S&H Distribution, LLC

Plaintiff's Attorney: James F Cann
Address: 1125 S. 103rd St., Suite 800
Omaha, NE 68124-6018

Telephone: (402) 390-9500

A copy of the complaint/petition is attached. To defend this lawsuit, an appropriate response must be served on the parties and filed with the office of the clerk of the court within 30 days of service of the complaint/petition. If you fail to respond, the court may enter judgment for the relief demanded in the complaint/petition.

Nebraska Supreme Court Rule 2-208 requires individuals involved in a case who are not attorneys and representing themselves to provide their email address to the court in order to receive notice by email from the court about the case. Complete and return the attached form to the court if representing yourself.

Date: MARCH 23, 2022        BY THE COURT: *Don Heath*
                                          Clerk

**EXHIBIT 1**

Image ID: D00234589D59

**SUMMONS**

Doc. No. 234589

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE COMPLAINT/PETITION ON:

    Meyer Laboratory, Inc.
    Marrufo-Gray, Sherrey
    2401 NW Jefferson St
    Blue Springs, MO 64015

BY: Foreign Officer
Method of service: Personal Service

You are directed to make such service within twenty days after date of issue, and show proof of service as provided by law.

Filed in Sarpy District Court
*** EFILED ***
Case Number: D59CI220000367
Transaction ID: 0018040256
Filing Date: 03/01/2022 04:16:09 PM CST

# IN THE DISTRICT COURT OF SARPY COUNTY, NEBRASKA

| | |
|---|---|
| S&H DISTRIBUTION, LLC, | Case No. CI _____ |
| Plaintiff, | |
| v. | COMPLAINT AND JURY DEMAND |
| MEYER LABORATORY, INC., | |
| Defendant. | |

Plaintiff S&H Distribution, LLC ("S&H") states the following for its claims for relief against Defendant Meyer Laboratory, Inc. ("Meyer").

## PARTIES, JURISDICTION, AND VENUE

1. S&H is a Nebraska limited liability company with its principal place of business in Gretna, Sarpy County, Nebraska.

2. Meyer is a Kansas corporation, with its principal place of business in Blue Springs, Jackson County, Missouri. Meyer is not authorized to transact business in the state of Nebraska.

3. Upon information and belief, Meyer engages in sales of cleaning chemicals in the state of Nebraska, including within Sarpy County, Nebraska.

4. This Court has jurisdiction over this matter pursuant to Neb. Rev. Stat. §§ 24-302; 25-536.

5. Venue is proper in this Court pursuant to Neb. Rev. Stat. § 25-403.01.

## GENERAL ALLEGATIONS

6. S&H provides industry leading, high quality, non-corrosive cleaning products for the ready mix concrete and automotive industries.

7. S&H has expended significant funds testing, and marketing cleaning chemicals that are effective, non-corrosive, and safely used without personal protective equipment.

8. S&H has built a large clientele throughout Nebraska, Iowa, Kansas, Missouri, South Dakota, Minnesota, and Texas based upon the fact that its products are effective and safe.

9. Meyer is also engaged in the business of selling cleaning chemicals that are used in the ready mix concrete industry.

## MEYER'S SAFETY DATA SHEETS AND ON-SITE MANUFACTURING

10. Previous to 2020, Meyer distributed and sold concrete truck cleaning products known as Mudslinger, Triumph Shine, and Hammer Clean. Said products were delivered with corresponding Safety Data Sheets that properly identified the products' hazards including but not limited to "acute toxicity – inhalation (vapors)," "skin corrosion/irritation," "serious eye damage/eye irritation," and "may be harmful if swallowed.

11. The purpose of Safety Data Sheets is to provide employers and employees with information on the hazards associated with exposure to chemicals in the workplace, and in furtherance of this purpose, according to regulations propounded by OSHA, Section 2 of each Safety Data Sheet should contain the classification of potential hazards as set forth by OSHA.

12. From and after 2020, Meyer began delivering Hammer Clean and Mudslinger products with Safety Data Sheets that no longer

2

identify any hazard classification or corrosiveness in Section 2 of the Safety Data Sheets despite the fact that the Hammer Clean and Mudslinger products have pH levels below 2.0 and qualify for a "Severe Eye and Skin Irritation/Corrosion" categorization.

13. When a customer purchases a Hammer Clean or Mudslinger product from Meyer, Meyer transports a concentrated chemical from distribution sites to the customer's site and dilutes the product with whatever water is available to the customer on-site.

14. Meyer does not test the water used nor the final product to determine whether the diluted product is safe or non-corrosive, thus the corrosiveness of the final product left on-site is dependent upon the quality and volume of water utilized at the site. This leads to varying levels of corrosiveness of the final product.

15. Numerous samples of diluted Meyer product have been tested and reveal that pH levels remain below 2.0 after dilution which would qualify for a "severe eye and skin irritation/corrosion" categorization.

16. Furthermore, laboratory testing of Meyer's products showed that even the pH values listed in the Safety Data Sheets overstated the safety of the products. Laboratory testing results showed that the actual pH value of these products varied widely, from site to site, ranging from 0.7 to 1.97.

17. From and after 2020, the Safety Data Sheets for Hammer Clean RTU, Mudslinger RTU, and Mudslinger R RTU all fail to classify the products as hazardous.

18. From and after 2020, the Safety Data Sheets for Hammer Clean RTU, Mudslinger RTU, and Mudslinger R RTU provide false and misleading information regarding the potential dangers of improper use by employees of purchasers of Meyer's products and by

3

failing to identify these hazards, these Safety Data Sheets are in violation of regulations propounded by OSHA.

## MYERS' PRODUCT LABELING IS MISLEADING

19. In an further attempt to convince potential new clients that its products are non-corrosive and non-hazardous, from and after 2020, Meyer began marketing its Hammer Clean and Mudslinger products with a product label that included the statements, "Employee safe," and "Reduced skin irritation," while also including warning statements for corrosion/irritation and hazard pictograms from the Globally Harmonized System (GHS) for authoring Safety Data Sheets and product labels.

20. The "Employee safe" and "Reduced skin irritation" label statements are not in accord with the warning statements and pictograms and as such, the labels are misleading or deceptive. Accordingly, Meyer's labels are non-compliant with regulations set forth by the United States Occupational Safety and Health Administration ("OSHA") as well as the Nebraska Uniform Packaging and Labeling Regulations.

## MISMATCHED LABELS AND SAFETY DATA SHEETS

21. Upon delivering product, Meyer leaves the customer with a product label. Upon information and belief, the same label referencing "Mudslinger Concrete Remover" is left for every chemical, regardless of whether the actual product delivered is Mudslinger R, Mudslinger RTU, and Mudslinger R RTU, or a Hammer Clean product. Each of those products has its own Safety Data Sheet.

22. Without a proper product label, the product delivered to the customer and loaded into the customer's chemical pumps is not properly identified.

4

23. Conformity between the label and the Safety Data Sheet is important because the label is the customer's first place to look in order to determine proper personal protective equipment and product use. The Safety Data Sheet is consulted if any accidents happen so that the customer knows how to treat the accident. If the Safety Data Sheet and the label do not conform to one another, the wrong Safety Data Sheet can be utilized in response to an accident, and thus, the wrong steps may be taken to respond to an accident and an employee may be left with a severe burn or eye damage.

24. Meyer's failure to deliver proper product labels with its products is noncompliant with regulations set forth by the United States Occupational Safety and Health Administration ("OSHA") as well as the Nebraska Uniform Packaging and Labeling Regulations.

## MISLEADING STATEMENTS REGARDING DEPARTMENT OF TRANSPORTATION REGULATION

25. Meyer advertises on its website that its products are non-corrosive, non-hazardous, and not regulated by the United States Department of Transportation ("USDOT").

26. 49 CFR Part 172 and 173 corrosive liquids Class 8 generally applies to any liquid with a pH of less than 2 or greater than 12. Given that pH lab tests for diluted Meyer products resulted in a pH of less than 2.0 in six out of the eight samples tested, and that the pH of less than 2 was stated in three out of the six Safety Data Sheets, these products should generally be considered corrosive liquids and labeled as such under the United States Department of Transportation Regulations, and must be transported in a manner compliant with USDOT regulations. Therefore, Meyer's statements are further misleading and attempt to portray its chemicals as non-hazardous despite the fact that these representations are untrue.

27. As a result of Meyer's false and misleading business practices, S&H's clients have begun purchasing Meyer's products, as

5

they are represented as less expensive, non-hazardous alternatives to S&H's products.

28. Meyer's election to use misleading or deceptive labels together with non-compliant Safety Data Sheets, together with inaccurate statements on its website, all of which individually and collectively fail to identify the Hammer Clean and Mudslinger products as hazardous chemicals was calculated to give Meyer an unfair competitive advantage over Plaintiff whose competing ready mix concrete products properly disclose hazards and precautionary requirements, and otherwise comply with applicable laws and regulations.

29. Not only are Meyer's false and misleading business practices harmful to S&H, but they are harmful to the safety of the public as those in the ready-mix concrete industry may decide to purchase Meyer's products and not take adequate precautions due to Meyer's harmful falsehoods.

## FIRST CLAIM FOR RELIEF
### Violation of the Nebraska Uniform Deceptive Trade Practices Act. Neb. Rev. Stat. § 87-301 *et seq.*

30. S&H incorporates the foregoing paragraphs as if set forth fully herein.

31. As shown above, Meyer has knowingly and willfully engaged in deceptive trade practices as defined in the Nebraska Uniform Deceptive Trade Practices Act ("NUDTPA") in at least the following ways:

    a. Causing likelihood of confusion or of misunderstanding as to the certification of non-hazardousness of its chemicals;

b. Representing that its chemicals have characteristics or benefits they do not have;

c. Representing that its chemicals are of a particular standard, quality, or grade when they are actually of another;

d. Using false and misleading labels and Safety Data Sheets in order to defraud customers by obtaining money or property by knowingly false or fraudulent pretenses, representation, or promises;

32. In the manufacture, production, distribution, promotion, display for sale, offer for sale, attempt to sell, or sale of its chemicals, making a deceptive or misleading representation or designation, or omitting material information about its chemicals or failing to identify the contents of the chemicals or the nature of the chemicals.

33. S&H has experienced harm due to customers choosing to purchase Meyer's hazardous products that are deceptively marketed as non-hazardous.

34. If permitted to continue with the aforementioned deceptive trade practices, S&H will experience future harm due to current customers purchasing Meyer's products instead of S&H's or by potential new clients of S&H choosing Meyer's products over S&H's for the reason that they are deceptively marketed as non-hazardous.

WHEREFORE, Plaintiff S&H Distribution, LLC respectfully requests judgment in its favor and against Defendant Meyer Laboratory, Inc. awarding preliminary and permanent injunctive relief that Meyer is not permitted to market its products with false and misleading labels and Safety Data Sheets; disgorgement of profits wrongfully gained by Meyer due to its deceptive trade practices; costs and attorneys' fees as permitted by statute; and for such other, further, and different relief as this Court deems just and equitable.

## SECOND CLAIM FOR RELIEF
Violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601 *et seq.*

35. S&H incorporates the foregoing paragraphs as if set forth fully herein.

36. Pursuant to the Nebraska Consumer Protection Act ("NCPA"), Meyer has engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce by providing knowingly false and misleading Safety Data Sheets and labels, and by marketing its products as non-hazardous, non-corrosive, and non-DOT regulated.

37. Meyer's violations of the NCPA may directly or indirectly affect the people of Nebraska by subjecting employees of clients of Meyer's to the use of hazardous, corrosive chemicals without proper guidance as to the handling, use of personal protective equipment, and treatment of exposure to these chemicals.

38. S&H has experienced harm due to customers choosing to purchase Meyer's hazardous products that are deceptively marketed as non-hazardous.

39. If permitted to continue with the aforementioned deceptive trade practices, S&H will experience future harm due to current customers purchasing Meyer's products instead of S&H's or by potential new clients of S&H choosing Meyer's products over S&H's for the reason that they are deceptively marketed as non-hazardous.

WHEREFORE, Plaintiff S&H Distribution, LLC respectfully requests judgment in its favor and against Defendant Meyer Laboratory, Inc. awarding preliminary and permanent injunctive relief that Meyer is not permitted to market its products with false and misleading labels and Safety Data Sheets; disgorgement of profits wrongfully gained by Meyer due to its deceptive trade practices; actual

damages in an amount to be proved at trial; statutory damages in an amount of $1,000; costs and attorneys' fees as permitted by statute; and for such other, further, and different relief as this Court deems just and equitable.

### THIRD CLAIM FOR RELIEF:
### Tortious Interference with a Business Relationship

40. S&H incorporates the foregoing paragraphs as if set forth fully herein.

41. S&H has built a large client-base due to its effective, non-hazardous cleaning products. S&H has a valid business relationship or expectancy to continued business from these clients absent a competing, non-hazardous product.

42. Meyer has knowledge of S&H's client-base, and, upon information and belief, it is for this reason that Meyer has begun to falsely market its products as non-hazardous to directly compete with S&H.

43. By deceptively and unfairly marketing its chemicals as low-cost, non-hazardous alternatives to S&H's products, Meyer has unjustly and intentionally interfered with S&H's valid business relationships and expectancies.

44. Upon information and belief, S&H customers have switched to purchasing Meyer's products rather than S&H's products because Meyer deceptively and unfairly marketed its products as low-cost, non-hazardous alternatives to S&H's products.

45. S&H has experienced harm due to customers choosing to purchase Meyer's hazardous products that are deceptively marketed as non-hazardous.

46. If permitted to continue with the aforementioned deceptive trade practices, S&H will experience future harm due to

9

current customers purchasing Meyer's products instead of S&H's or by potential new clients of S&H choosing Meyer's products over S&H's for the reason that they are deceptively marketed as non-hazardous.

WHEREFORE, Plaintiff S&H Distribution, LLC respectfully requests judgment in its favor and against Defendant Meyer Laboratory, Inc. awarding preliminary and permanent injunctive relief that Meyer is not permitted to market its products with false and misleading labels and Safety Data Sheets; disgorgement of profits wrongfully gained by Meyer due to its deceptive trade practices; actual damages in an amount to be proved at trial; statutory damages in an amount of $1,000; costs and attorneys' fees as permitted by statute; and for such other, further, and different relief as this Court deems just and equitable.

## FOURTH CLAIM FOR RELIEF:
### Preliminary and Permanent Injunctive Relief

47. S&H incorporates the foregoing paragraphs as if set forth fully herein.

48. Due to Meyer's deceptive and unfair trade practices, S&H is entitled to preliminary and permanent injunctive relief preventing Meyer from utilizing the offending Safety Data Sheets and labels and from marketing its hazardous products as non-hazardous.

WHEREFORE, Plaintiff S&H Distribution, LLC respectfully requests judgment in its favor and against Defendant Meyer Laboratory, Inc. awarding preliminary and permanent injunctive relief that Meyer is not permitted to market its products with false and misleading labels and Safety Data Sheets; and for such other, further, and different relief as this Court deems just and equitable.

## REQUEST FOR JURY TRIAL

S&H hereby requests a jury trial on the matters raised by this Complaint.

Dated: March 1st, 2022.

        S&H DISTRIBUTION, LLC,
        Plaintiff,

        By: /s/ James F. Cann
            James F. Cann, #21458
            Cody B. Nickel, #26838
            KOLEY JESSEN P.C., L.L.O.
            One Pacific Place, Suite 800
            1125 South 103rd Street
            Omaha, NE 68124-1079
            (402) 390-9500;
            James.Cann@koleyjessen.com
            Cody.Nickel@koleyjessen.com

Attorneys for Plaintiff.