IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| S&H DISTRIBUTION, LLC,<br><br>                  Plaintiff,<br><br>vs.<br><br>MEYER LABORATORY, INC.,<br><br>                  Defendant. | **8:22CV178**<br><br>**MEMORANDUM AND ORDER** |

This is a deceptive trade practices case in which S&H Distribution, LLC ("S&H") claims Meyer Laboratory, Inc. ("Meyer") has acted in a dishonest and deceptive manner in advertising the safety of its products. *See generally* Filing No. 1-1. It comes before the Court on defendant Meyer's motion to dismiss for failure to state a claim, Filing No. 6. For the reasons stated herein, the Court denies Meyer's motion to dismiss.

**I.**  **BACKGROUND**

S&H is a Nebraska limited liability company with its principal place of business in Gretna, Sarpy County, Nebraska. Filing No. 1-1 at 3. S&H provides cleaning products for ready mix concrete and automotive industries. *Id.* at 4. S&H has clientele throughout Nebraska and the Midwest. *Id.* Meyer is a Kansas corporation, with its principal place of business in Blue Springs, Jackson County, Missouri. *Id.* Meyer sells cleaning chemicals in the state of Nebraska, including in Sarpy County. *Id.*

The complaint alleges that before 2020, Meyer distributed and sold concrete cleaning products known as Mudslinger, Triumph Shine, and Hammer Clean. *Id.* When delivering the products to its customers, Meyer included corresponding safety data sheets. *Id.* The sheets identified the products' hazards, including but not limited to "acute toxicity – inhalation (vapors)," "skin corrosion/irritation," "serious eye damage/eye

1

irritation," and "may be harmful if swallowed." *Id.* The purpose of the Safety Data Sheets is to provide employers and employees with information on the hazards associated with exposure to chemicals in the workplace, and in furtherance of this purpose, according to regulations propounded by OSHA, Section 2 of each Safety Data Sheet should contain the classifications of potential hazards as set forth by OSHA. *Id.*

The complaint alleges that from and after 2020, Meyer began delivering Hammer Clean and Mudslinger products with safety data sheets that no longer identify any hazard classification or corrosiveness in Section 2 even though the Hammer Clean and Mudslinger products have pH levels below 2.0 and therefore qualify for a "severe eye and skin Irritation/Corrosion" OSHA categorization. *Id.* at 4–5. Allegedly, when a customer purchases a Hammer Clean or Mudslinger product form Meyer, Meyer transports a concentrated chemical from distribution sites to the customer's site and dilutes the product with whatever water is available on-site. *Id.* at 5. Meyer does not test the water used nor the final product to determine whether the diluted product is safe or non-corrosive, thus the corrosiveness of the final product left on-site is dependent upon the quality and volume of water utilized at the site. *Id.* The complaint alleges this leads to varying levels of corrosiveness of the final product. *Id.* S&H alleges that it has tested numerous samples of this dilution and discovered that the product's pH levels can remain below 2.0 after dilution which would qualify for a "severe eye and skin irritation/corrosion" OSHA categorization. *Id.* Furthermore, laboratory testing of Meyer's products showed that even the pH values listed in the Safety Data sheets overstated the safety of the products. *Id.* Allegedly, the laboratory testing results showed that the actual pH values of these products varied widely, from site to site, ranging from 0.7 to 1.97. *Id.*

The complaint alleges that from and after 2020, the Safety Data Sheets for Hammer Clean RTU, Mudslinger RTU, and Mudslinger R RTU all fail to classify the products as hazardous. *Id.* The complaint also alleges that from and after 2020, the Safety Data Sheets for Hammer Clean RTU, and Mudslinger RTU, and Mudslinger R RTU provide false and misleading information regarding the potential dangers of improper use by purchasers of Meyer's products, and by failing to identify these hazards, these Safety Data Sheets are in violation of regulations propounded by OSHA. *Id.* at 5–6. Based on these allegations, S&H filed a cause of action against Meyer for engaging in deceptive trade practices as defined under the Nebraska Uniform Deceptive Trade Practices Act ("NUDTPA"), Neb. Rev. Stat. § 87-301 *et seq.*; providing knowingly false and misleading safety data sheets and labels pursuant to the Nebraska Consumer Protection Act ("NCPA"), Neb. Rev. Stat. § 59-1601 *et seq.*; and tortiously interfering with S&H's valid business relationships and expectancies. *See* Filing No. 1-1. Meyer filed a motion to dismiss for failure to state a plausible claim for relief and moves to dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). Filing No. 8 at 2.

II.     **STANDARD OF REVIEW**

1. *Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)*

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp.*, 550 U.S. at 555). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his

3

entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Under *Twombly*, a court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *See id.* (describing a "two-pronged approach" to evaluating such motions: First, a court must accept factual allegations and disregard legal conclusions; and then parse the factual allegations for facial plausibility). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. DISCUSSION

Meyer moves to dismiss S&H's complaint, arguing S&H has not stated a plausible claim for relief as to any of its three causes of action. Filing No. 8 at 2. The Court addresses these arguments in turn.

#### A. Exhibits

First, the Court must determine whether it can consider the exhibits Meyer includes with its motion to dismiss. Specifically, Meyer attaches to its motion its own website's homepage and the tote labels for both the Mudslinger and Hammer clean products. Filing No. 7; Filing No. 14. It argues that since S&H's complaint references the data sheets and the website, they are necessarily embraced by the pleadings and the Court can consider them when ruling on a 12(b)(6) motion. Filing No. 8 at 7.

Generally, the Court may not consider matters outside the pleadings when deciding a motion to dismiss for failure to state a claim. Fed. R. Civ. P. 12(d). However, there is an exception for "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quoting *Kushner v. Beverly Enterprises, Inc.*, 317 F.3d 820, 831 (8th Cir. 2003). The Eighth Circuit has previously said this "necessarily embraced" exception does not disrupt the original intent of Rule 12(b)(6) and 12(d), which is to ensure that a 12(b)(6) motion will succeed or fail based on the allegations contained on the face of the complaint. *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687–88 (8th Cir. 2003).

The contents of the website, the Hammer Clean tote label, and the Mud Slinger tote label that accompany the Motion to Dismiss were alleged and discussed in the complaint. *See* Filing No. 1-1 at 6 (complaint referencing the "product label that included the statements, 'Employee safe,' and 'Reduced skin irritation,'); *Id.* at 7 (complaint stating, "Meyer advertises on its website that its products are noncorrosive, non-hazardous, and not regulated by the United States Department of Transportation"). They are therefore necessarily embraced by it. The Court will consider the exhibits when ruling on the Motion to Dismiss.

### B. NUDTPA

Meyer moves to dismiss S&H's claim under the Nebraska Uniform Deceptive Trade Practices Act ("NUDTPA") because S&H has not established that Meyer's representation concerning its own products claim, "characteristics or benefits that the goods or service did not have." Filing No. 8 at 4; Neb. Rev. Stat. § 87-302(a)(5). Additionally, Meyer argues that S&H has not adequately alleged the misrepresentation

influenced consumer behavior. Filing No. 8 at 4. The Court finds S&H has adequately stated a claim under the NUDPTA.

The NUDTPA defines and prohibits what it considers a deceptive trade practice and seeks to "make a uniform law of those states which enact" it. Neb. Rev. Stat. § 87-305. Under the NUDTPA, the deceptive trade practice must affect the public. *See JB & Assocs., Inc. v. Nebraska Cancer Coal.*, 303 Neb. 855 (2019) (holding that trade disparagement under NUDTPA requires public dissemination); *Denali Real Est., LLC v. Denali Custom Builders, Inc.*, 302 Neb. 984 (2019) (plaintiff must show consumer confusion regarding source of goods or services and affiliation).

S&H argues Meyer's product labels and website make false claims about the products it sells. *See generally* Filing No. 1-1. Specifically, the website states Meyer's products are "Safe for People" and are "non-hazardous, non-corrosive, non-DOT regulated with a triple '0' NFPA rating." Filing No. 7-1. Meyer claims the products to be "Safe for People" but only after they have diluted the solution. Filing No. 8 at 7. According to the allegations in the complaint, even when the product is diluted, the acidity may rise to a level that is harmful to people when touched, and thus such a claim is deceptive. *Id.* S&H alleges that consumers are more likely to purchase S&H's products because it misrepresents that they are safe. Filing No. 1-1 at 9. Thus, S&H has stated a claim under the NUDTPA, including alleging that Meyer's misrepresentations have influenced consumer behavior.

**C. NCPA**

Next, Meyer moves to dismiss S&H's claim under the Nebraska Consumer Protection Act ("NCPA") for three reasons: (1) to be actionable under the NCPA, the unfair and deceptive act must have an adverse impact upon public interest which S&H fails to

allege, (2) S&H failed to establish it was either a direct or indirect purchaser and therefore lacks standing to bring an NCPA claim, and (3) the NCPA excludes activities which are already subject to regulation under state or federal law from the scope of the NCPA and Meyer's data sheets are already regulated by OSHA. Filing No. 8 at 8–10.

The NCPA prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. Neb. Rev. Stat. § 59-1602. A person injured in violation of the NCPA may maintain a private right of action to enjoin further violations and to recover his actual damages. Neb. Rev. Stat. § 59-1609. However, to be actionable under the NCPA, the unfair or deceptive act or practice must have an impact on the public interest. *Nelson v. Lusterstone Surfacing Co.*, 258 Neb. 678 (2000).

The Court disagrees with Meyer's arguments in support of dismissal in all three respects. First, as above, the complaint adequately alleges a public harm because it claims the labels, safety data sheets, and Meyer's website pose a risk to consumers' skin should they come into contact with non-diluted or poorly diluted solution. Filing No. 1-1 at 8.

Second, as to Meyer's standing argument, the NCPA states "[a]ny person who is injured in his or her business or property by a violation of sections 59-1602 to 59-1606, whether such injured person dealt directly or indirectly with the defendant . . . may bring a civil action." Neb. Rev. Stat. § 59-1609. Section § 1601 of the NCPA defines a "person" to include corporations and limited liability companies like S&H. Neb. Stat. Rev. § 59-1601. S&H claims it has been indirectly injured by losing customers to Meyer because of Meyer's deceptive website and labeling. Thus, S&H has standing to bring a claim under the NCPA.

Lastly, the fact the safety data sheets are governed by another federal agency (OSHA) does not mean Meyer is "immunized" from the NCPA. "[P]articular conduct is not immunized from the operation of the Consumer Protection Act merely because the actor comes within the jurisdiction of some regulatory body, the immunity arises if the conduct itself is also regulated." *Hage v. Gen. Serv. Bureau*, 306 F. Supp. 2d 883, 890 (D. Neb. 2003) (citing *Wrede v. Exch. Bank of Gibbon*, 247 Neb. 907 (1995)). S&H has alleged that Meyer used misleading and deceptive information in its OSHA data sheets. Filing No. 11 at 16. Because this misconduct itself is not regulated by OSHA (rather, the data sheets are supposed to contain accurate information), it is not immunized from the NCPA.

D. **Tortious Interference**

Lastly, Meyer moves to dismiss S&H's claim that it tortiously interfered with S&H's business relationships.

To succeed on a claim for tortious interference with a business relationship or expectancy there are five elements: (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted. *Denali Real Estate, LLC*, 302 Neb. 984–87.

S&H claims Meyer has begun to falsely market its products to S&H's clients, thereby tortiously interfering with S&H's business relationships. Filing No. 1-1 at 11–12. Meyer argues S&H has failed to state a tortious interference claim because the Safety Data Sheets and labels that it claims are misleading are not delivered to the customer until after a sale has been made, meaning any such misinformation could not have been

8

the basis for it "taking" S&H's customers.  Filing No. 8 at 11.  However, S&H's complaint also alleges Meyer's website contains misleading information.  Filing No. 1-1 at 11.  Unlike the data sheets, the website would be available as a source of product information to potential customers before their purchase of Meyer's products.  S&H further alleges the website is a conscious design to elicit sales from what would otherwise be S&H's customers.  Filing No. 1-1 at 7–8.  Thus, S&H has stated a viable tortious interference claim at this stage of the proceedings.

## IV.  CONCLUSION

S&H has adequately stated a claim against Meyer, and Meyer's motion to dismiss is accordingly denied.

IT IS ORDERED:

1. Defendant's, Meyer Laboratory, Inc.'s, motion to dismiss, Filing No. 6, is denied.

Dated this 5th day of October, 2022.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge